**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:17-CR-9 (2) |
| | § | |
| CHIA JEAN LEE | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Chia Jean Lee's ("Lee") *pro se* "Petition for Emergency Relief Under the Extraordinary Dangerous Nature of the COVID-19 Outbreak Among Federal Prison Population" (#235), wherein Lee, for a second time, seeks a reduction of her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i). The Government filed a response in opposition (#245). United States Probation and Pretrial Services ("Probation") submitted an updated report recommending that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I. Background

Following a ten-day trial, on October 10, 2018, a jury returned a verdict finding Lee guilty of conspiring to distribute five controlled substances in violation of 21 U.S.C. § 846. On May 3, 2019, the court sentenced Lee to 188 months' imprisonment, to be followed by a three-year term of supervised release. Her conviction was affirmed by the United States Court of Appeals for the Fifth Circuit on July 14, 2020, and her petition for a writ of certiorari was denied by the Supreme Court on October 19, 2020.

On May 21, 2020, Lee filed a *pro se* Motion to Reduce Sentence (#217), wherein she requested that the court reduce her sentence under 18 U.S.C. § 3582(c)(1)(A). Lee claimed that

she suffers from fibromyalgia, gastroesophageal reflux disease, migraines, psoriasis, rosacea, severe vitamin D deficiency, osteoporosis, sciatic pain, neuropathy (arm and leg), frequent upper respiratory infections, frequent nasal bleeding, hearing loss, ringing in ears, cataracts, severe hemorrhoids, and a lump in her neck causing occasional fainting and dizziness. Lee also cited to the COVID-19 pandemic as an extraordinary and compelling reason justifying her release. On June 5, 2020, the court denied Lee's original motion, finding that Lee failed to identify a qualifying medical condition and that fear of contracting COVID-19 was insufficient to justify early release from imprisonment (#220). Lee is currently housed at a federal medical center located in Fort Worth, Texas ("FMC Carswell"). Lee's projected release date is February 15, 2032.

## II. Analysis

On September 21, 2020, Lee submitted a second request for home confinement and/or compassionate release to the warden of FMC Carswell, which Warden Carr denied on October 2, 2020. Although Lee complied with the exhaustion requirement before filing the instant motion, nothing in her motion indicates that extraordinary and compelling reasons exist to modify her term of imprisonment.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL

§ 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

A. Medical Conditions

Lee's current motion asserts that she suffers from the health concerns listed in her first motion, as well as "Neck vessel, Calcium Lizatton (waiting for MRI or CT) . . . History of Colon Polyposis (waiting for colonoscopy and procedure to follow up) . . . joint stiffness and postural Hypotension, Syncope, High Blood Pressure, Arthritis, Shortness of Breath, Post-traumatic stress disorder ("PTSD"), Anxiety and the imminent exposure to contracting Covid-19 at FMC Carswell."

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). As noted in the court's June 2020 Memorandum and Order, according to Lee's Presentence Investigation Report ("PSR"), which was prepared in April 2019, she has a medical history of occasional migraines and chronic hemorrhoids, and she reported having bone density issues and a vitamin D deficiency. Lee also indicated that she has a history of rosacea, psoriasis, and fibromyalgia, none of which had flared up at the time her PSR was filed. Lee's BOP medical records reveal the she has the following current health problems: astigmatism and presbyopia, constipation, "unspecified hemorrhoids," "pain in unspecified limb," fibromyalgia, "rash and other nonspecific skin eruption," and a left elbow wound.

Absent from Lee's medical records is any diagnosis of hypertension or postural hypotension, two of the conditions from which Lee claims she suffers. Lee's most recent blood pressure readings are reported as follows: November 4, 2020, 138/74; October 27, 2020, 136/73; October 26, 2020, 136/73; October 25, 2020, 156/87; August 18, 2020, 137/63; June 16, 2020, 147/79; April 6, 2020, 148/84; and February 12, 2020, 113/66. According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a

diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher. Thus, it appears that many of Lee's recorded blood pressure readings fall within either the "At Risk" or "High Blood Pressure" levels. The court acknowledges that Lee's elevated blood pressure levels, according to the CDC website, may place her at a higher risk of severe symptoms should she contract COVID-19[2]; nonetheless, such a commonplace malady does not make Lee's case "extraordinary." *See United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence).

While unclear, Lee's reference to "Neck vessel, Calcium Lizatton" may allude to a swollen lymph node in Lee's neck, which was detected during a dental examination. On March 2, 2020, James Jowdy, D.O. ("Dr. Jowdy"), had a clinical encounter with Lee and observed that an ultrasound showed a 1.5 cm lymph node on Lee's neck and recommended a follow-up in three months, noting that a CT scan may be necessary. On November 4, 2020, however, Dr. Jowdy

[2] In relevant part, the CDC states that adults with high blood pressure might be at an increased risk for severe illness.

examined Lee and noted that Lee reported that her lymph node issue was resolved. Dr. Jowdy prescribed repeating ultrasound imaging every three months and canceled other "advanced image." On that same date, Dr. Jowdy also stated that Lee has "no immediate adverse health concerns appreciated at this time."

With respect to her claimed history of colon polyposis, Lee's medical records document that she has a history of hemorrhoids and colon polyps; however, on December 12, 2019, Lee refused a mammogram and her scheduled colonoscopy. Lee's BOP records indicate that she is receiving medication for constipation and hemorrhoids.

In any event, none of Lee's medical conditions are terminal or substantially diminish her ability to provide self-care. *See Thompson*, 984 F.3d at 433. Lee's medical records indicate that she is classified as a BOP medical Care Level 1 inmate. Care Level 1 inmates are less than 70 years of age and are generally healthy; they may have limited medical needs that can be easily managed by clinician evaluations every 6–12 months. Lee's medical summary does not meet the criteria listed above. In fact, Lee's BOP records reveal that she is housed in general population, has no medical restrictions, has regular duty work assignments, and is cleared for food service. Thus, Lee has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce her sentence.

"Compassionate release is discretionary, not mandatory, and [may] be [refused] after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

B. Age

Lee asserts that she is eligible for compassionate release due to her age. The USSG provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B).

Alternatively, 18 U.S.C. § 3582(c)(1)(A)(ii) allows modification of a term of imprisonment for age-related reasons when:

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(ii).

Here, Lee does not meet either criteria for age-related compassionate release. Lee is only 62 years old, which is less the stated ages in the USSG and in § 3582(c)(1)(A)(ii). Moreover, Lee has served 29 months (approximately 15%) of her 188-month sentence, well below the lesser of 10 years or 75 percent of her term of imprisonment and far less than the 30-year minimum in § 3582(c)(1)(A)(ii).

C. "Other" Reasons

Lee's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling

reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Lee for any "other" reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Lee's situation.

Lee expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of March 21, 2021, the figures available at www.bop.gov list 3 inmates (out of a total inmate population of 1,320) and 0 staff members at FMC Carswell as having confirmed positive cases of COVID-19, 755 inmates and 3 staff members who have recovered, and 6 inmates who have succumbed to the disease. Thus, it appears that the facility where Lee is housed is handling the outbreak appropriately and providing adequate medical care. In fact, according to

her medical records, Lee has repeatedly tested negative for COVID-19, most recently on January 7, 2021.

Although Lee expresses legitimate concerns regarding COVID-19, she does not establish that the BOP cannot manage the outbreak within her correctional facility or that the facility is specifically unable to treat Lee, if she were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Woods*, No. 4:11-CR-106-SDJ, 2020 WL 6391591, at *4 (E.D. Tex. Nov. 2, 2020) (noting that "courts have concluded that an inmate's concerns about risks associated with the spread of COVID-19 are not consistent with the policy statement of the Commission as required by Section 3582(c)(1)(A)"); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to

present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 86,902 doses of the vaccine. Courts have denied compassionate release in light of the BOP's vaccination program. *See United States v. Canterbury*, No. 216CR00107KJDPAL, 2021 WL 398230, at *3 (D. Nev. Feb. 4, 2021) (denying compassionate release, in part, because the defendant "falls into BOP priority level 2 and is likely in line for a vaccination"); *United States v. Cornell*, No. 03-CR-431, 2021 WL 229960, at *3 (N.D. Ohio Jan. 22, 2021) ("While the Court sympathizes with [the defendant's] serious health ailments and recognizes [his] COVID-19 exposure risk, there is reason for optimism. The Bureau of Prisons has begun administering vaccines to its inmates under Centers for Disease Control guidance."); *accord United States v. Rodriguez*, No. 1:18CR401-7, 2021 WL 467014, at *2 (M.D.N.C. Feb. 9, 2021). According to www.bop.gov, FMC Carswell, where Lee is housed, has fully inoculated 708 inmates and 273 staff members.

Therefore, Lee has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce her sentence.

D. Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. The nature and circumstances of Lee's offense of conviction entailed her participation in a multi-year conspiracy to distribute, dispense, and possess with intent to distribute and dispense large quantities of dangerous and medically unnecessary controlled substances, including oxycodone, amphetamine salts, hydrocodone, alpraxolam, and promethazine with codeine, in a calculated scheme to enrich herself and her husband/codefendant. Lee, who was a registered nurse and has a master's degree in epidemiology and public health from Yale University, worked with her husband, who was a physician, at a medical clinic in Richardson, Texas. She served as a nurse and the officer manager of the medical clinic where a variety of medications were being prescribed outside the scope of professional practice and without a legitimate medical purpose. Lee managed the medical office, provided medical assistance, routinely wrote her husband's prescriptions for pain management patients, and handled/deposited the cash proceeds of between $3,000 and $9,000 per day generated by the clinic. Lee brought the proceeds home at the end of the day and deposited most of the funds into a bank account two to three times per week, with the remainder being spent on personal expenditures. In view of the nature and circumstances surrounding her offense of conviction and her repeated refusal to accept responsibility for her actions, the court cannot conclude that she

would not pose a danger to any other person or to the community, if released from prison at this time.

In addition, granting Lee compassionate release would fail to provide just punishment for her offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a significant portion of his sentence. *Chambliss*, 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Lee after she has served only 29 months (approximately 15%) of her 188-month sentence would similarly minimize the impact of her crime and the seriousness of her offense.

E. Home Confinement

Furthermore, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the former United States Attorney

General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the CDC, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. Since March 26, 2020, the BOP has placed 23,062 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).

In his Memorandum to the BOP dated March 26, 2020, former Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Lee's past behavior and her refusal to recognize the wrongfulness of her actions give cause for concern as to her future conduct.

III. Conclusion

In short, Lee has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Accordingly, Lee's *pro se* "Petition for Emergency Relief Under the Extraordinary Dangerous Nature of the COVID-19 Outbreak Among Federal Prison Population" (#235) is DENIED.

SIGNED at Beaumont, Texas, this 21st day of March, 2021.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE